UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **UNITED STATES OF AMERICA,** | **CRIMINAL ACTION NO. 5:15-36-KKC** |
| Plaintiff, | |
| V. | **MEMORANDUM OPINION AND ORDER** |
| **LACHARLES ANTHONY WARD,** | |
| Defendant. | |

*** *** ***

This matter is before the Court on defendant LaCharles Anthony Ward's motion to suppress statements he made during a custodial interrogation and evidence seized from his motel room pursuant to a search warrant. (DE 13). An evidentiary hearing was held in this matter on July 24, 2015, and at the conclusion of the hearing, the Court took the matter under advisement. (DE 24). For the reasons stated below, the Court will deny Ward's motion to suppress.

**I. Background[1]**

In January 2015, law enforcement officers were investigating seven armed robberies of small central Kentucky businesses that had occurred within a short time span. (DE 1-2). From surveillance video collected at these businesses and also through victim statements, officers were able to identify a single male suspect and the suspect's vehicle, a dark-colored Chevrolet Suburban. An eye witness to the hotel robbery on January 22, 2015 advised that

---

[1] Unless otherwise noted, the following facts were established during the July 24, 2015 evidentiary hearing.

the suspect vehicle bore Kentucky license plate number "812-DAN." (13-2 Search Warrant Aff. at 2.)

On January 22, 2015, Detective Franz Wolff of the Lexington Division of Police developed and electronically distributed a photograph of the suspect vehicle. Early the next day, January 23, 2015, patrol officers located a Chevrolet Suburban matching the description of the suspect vehicle and bearing Kentucky license plate number "815-DAN" in the back parking lot of the Catalina Motel in Lexington, Kentucky. Staff at the Catalina Motel advised the officers that the vehicle was associated with LaCharles Ward, who had occupied Room 238 since January 1, 2015. Later, Catalina Motel staff viewed a photograph of Ward and confirmed that he was the same person who was staying at the motel and who had been operating the Chevrolet Suburban in the parking lot. Officers conducted surveillance on the Suburban and eventually observed Tasania Taylor, Ward's girlfriend, approach the vehicle with her small child. Officers approached Taylor in the parking lot and she took them to Ward in Room 238. Ward agreed to accompany officers to the Lexington police station where he was taken to an interview room.

Detective Wolff, Agent Sarah Decker of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, and Detective Autumn Howard of the Nicholasville, Kentucky Police Department interrogated Ward on video tape.[2] At the beginning of the interview, Ward informed officers that he was a high school graduate and stated that he had no physical or mental impairments, that he was on no medication, and that he had not taken any illegal drugs in the past 24 hours—a statement he later changed. Detective Wolff then read Ward his *Miranda* rights, and Ward verbally acknowledged that he understood his rights.

---

[2]The local law enforcement officer who transported Ward to the Lexington Police Department remained with him in the interview room until the interviewing officers arrived. Although Ward and the officer talked during that time, Ward was not questioned about anything relevant to this case, and his motion to suppress does not concern any statements made during the first hour and twenty minutes he was at the police department.

2

After Detective Wolff explained to Ward that it would be in his best interest to cooperate with the investigation, Ward asked to smoke a cigarette and to see his girlfriend, Taylor, and her child. Ward was permitted to smoke and see Taylor and her child. As the interview continued, Ward confessed to one of the robberies. After which he again asked to smoke and to see the child, but Detective Wolff explained that before they took a break, they needed to go over some details. As Ward kept talking, he revealed that he was addicted to heroin and that he was depressed and had contemplated suicide.

After a time, Ward accused the officers of not following through with their promise to let him to smoke and see his girlfriend and child. After Detective Wolff and Detective Howard assured him they would let him smoke and see Taylor, Ward stated "I'm done" and then "I'm done. 'Cause you ain't gonna do none of that." (DE 22 Interview at 21:53.) Detective Wolff explained that he was seeking Ward's cooperation, and Ward said "I'm done, man," stating that he cared about his girlfriend and child and the officers were not going to permit him to see them. (DE 22 Interview at 22:15.)

After another break during which Ward was again allowed to smoke and visit with Taylor, Ward began answering questions. About fifty minutes later, Ward was given another quick smoke break. Upon returning to the interview room, Ward answered questions from detectives of the Versailles, Kentucky Police Department and the Frankfort, Kentucky police department. Detective Wolff then returned to the interview room and continued questioning Ward for another half an hour. Over the course of over four hours, Ward eventually confessed to all seven robberies.

While Ward was at the police headquarters, but prior to his interrogation, Detective Howard applied for a search warrant for Ward's Chevrolet Suburban and Room 238 at the Catalina Motel. The affidavit in support of the search warrant provided as follows:

3

>On January 6th, 2015 at approximately 1045 hrs Nicholasville Police received a call for service in regards to an armed robbery which had just occurred at Check Into Cash located at 1091 North Main in Nicholasville in which a male subject wearing dark jeans, a white hoodie type jacket with a multi-color pattern including red and black. The subject had covered a large portion of his face by pulling the hood tightly and was armed with a black semi-auto handgun. The subject jumped the counter and demanded money from the business. The subject exited the store and is seen on surveillance camera footage leaving towards the back of the store. Upon further investigation of surveillance footage from area businesses, officers located footage of a dark colored Chevrolet Suburban with chrome trim which left the area from behind the business at the approximate time of the robbery. The vehicle was last seen on Imperial Way in Nicholasville. On January 22nd at approximately 0123 hrs, Nicholasville Police were dispatched to an armed robbery at Home Place Inn located at 181 Imperial Way in Nicholasville. A male subject met a clerk at the door and advised he wanted to rent a room. The subject pulled out a gun and forced the clerk back inside and demanded the money from the register. The male subject was described as wearing dark jeans, a white hoodie with red, white, and yellow designs or letters and a blue bandana over a portion of his face. Offices spoke with a witness who advised he saw a black longer SUV type vehicle travel from in front of Holiday Inn and cross over Imperial Way and park at Captain D's located at 189 Imperial Way. He also described the vehicle had large chrome wheels. He advised a black male subject exited the vehicle and pulled up the hood of his shirt/jacket. He advised the hoodie was white and had writing or something on it. The witness saw the male subject approach Home Place Inn and the clerk come to speak with him. He then saw the subject pull out a gun and the clerk screamed and went back inside. The witness made his way over to the vehicle and obtained the registration. He advised the registration was Ky 812-DAN and the vehicle was not occupied. Upon reviewing surveillance footage of neighboring businesses a dark colored Chevrolet Suburban with chrome wheels in seen in the area and exits footage going toward Captain D's as the witness described. On 01-23-2015 Officers from the Lexington Police department located a vehicle matching the description of the Chevrolet Suburban at The Catalina motel in Lexington. KY. That vehicle is bearing KY registration number 815-DAN which is only "1" digit different from the witnesses information. Catalina manager identified the subject driving the vehicle as LaCharles Ward, b/m, DOB 9/23/88 which was staying in room 238 since January 1st. He identified him by name and photo. Management also advised the rims were placed on the Suburban this week. Affiant is seeking search warrant to gain entry into hotel room 238 and KY 815-DAN in order to search for evidence that may be linked to the above listed robberies.

(DE 13-2 at 2.) Subsequently, a state court judge issued a search warrant, which the officers executed, seizing from the motel room, *inter alia*, clothing, bandanas, a green

4

money bag, 9mm and .40 caliber ammunition, and a Springfield Arm Model XD-40 handgun. (DE 20 Gov't Resp. at 11-12.)

## II. Analysis

Ward advances three arguments in his motion to suppress. First, he argues that his waiver of his *Miranda* rights could not have been knowing, intelligent, and voluntary because he was under the influence of heroin and was having suicidal ideations at the time of his interview. Second, Ward maintains that even if he did validly waive his *Miranda* rights, he later invoked his privilege against self-incrimination. Third, he argues that the search warrant was not supported by probable cause and that the good-faith exception to the exclusionary rule is inapplicable. (DE 13-1). The Court will address each of Ward's arguments in turn.

### *A. Waiver of* **Miranda** *Rights*

The Fifth Amendment to the United States Constitution provides that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend V. Anyone "questioned by law enforcement officers after being 'taken into custody or otherwise deprived of his freedom of action in any significant way' must first 'be warned that he has the right to remain silent, that any statement he does make may be used against him, and that he has the right to the presence of an attorney, either retained or appointed.'" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (quoting *Miranda v. Arizona*, 384 U.S. 436, 444 (1966)).

A waiver of rights under *Miranda* "must be made voluntarily, knowingly, and intelligently." *Moran v. Burbine*, 475 U.S. 412, 421 (1986). The burden is on the government to prove the existence of a waiver by a preponderance of the evidence. *Colorado v. Connelly*, 479 U.S. 157, 168 (1986). "The waiver inquiry has two distinct dimensions: waiver must be

5

voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception, and made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Berghuis v. Thompkins,* 560 U.S. 370, 382–83 (2010) (citations omitted). Moreover, "the prosecution . . . does not need to show that a waiver of *Miranda* was express." *Id.* at 384. "Where the prosecution shows that a *Miranda* warning was given and that it was understood by the accused, an accused's uncoerced statement establishes an implied waiver of the right to remain silent." *Id.*

Here, there is no dispute that Ward was read his *Miranda* rights. As to whether he waived his rights, Ward does not allege that any coercive police activity occurred, and thus, there is no question that his waiver was voluntary. *See United States v. Cody*, 498 F.3d 582, 588 (6th Cir. 2007) ("[C]oercive police activity is a necessary predicate to finding that a confession is not 'voluntary' within the meaning of the Due Process Clause."). Instead, he contends that his waiver was not "knowingly and intelligently" made, pointing to his minimal experience with the criminal justice system, his limited reading and writing capabilities, his suicidal ideations, and his heroin addiction. (DE 13-1 Mot. to Suppress at 2–4.)

"A court should consider the 'totality of the circumstances' of the interrogation to determine whether the suspect had the requisite level of comprehension" of the consequences of the decision to waive his rights. *Stanley v. Lazaroff*, 82 F. App'x 407, 422 (6th Cir. 2003) (quoting *Colorado v. Spring*, 479 U.S. 564, 573 (1987)). To be deemed knowing and intelligent, "[t]he Constitution does not require that a criminal suspect know and understand every possible consequence of a waiver of the Fifth Amendment privilege." *Spring,* 479 U.S. at 574. Instead, "we examine 'the particular facts and circumstances

6

surrounding [the] case, including the background, experience, and conduct of the accused,'" *Garner v. Mitchell,* 557 F.3d 257, 261 (6th Cir. 2009) (alterations in original) (quoting *Johnson v. Zerbst,* 304 U.S. 458, 464 (1938)), to determine "whether the 'suspect [knew] that he [could] choose not to talk to law enforcement officers, to talk only with counsel present, or to discontinue talking at any time,'" *id.* (alterations in original) (quoting *Spring,* 479 U.S. at 574). "'[T]he Supreme Court has never said that impairments from drugs, alcohol, or other similar substances can negatively impact' a suspect's waiver of his *Miranda* rights." *Treesh v. Bagley*, 612 F.3d 424, 433–34 (6th Cir. 2010) (quoting *Matylinsky v. Budge,* 577 F.3d 1083, 1095 (9th Cir. 2009)).

The record in this case shows that Ward knowingly and intelligently waived his right to remain silent. He affirmatively stated that he understood his *Miranda* rights after Detective Wolff read them to him at the beginning of his interview. Importantly, Ward was 26 years old with a high school education, and he provided rational responses to open-ended questions for over four hours. He appeared to be coherent and was not confused or disoriented by the questions being asked. Moreover, Detective Wolff testified that Ward did not appear to be under the influence of drugs or alcohol during the interview. Considering the totality of the circumstances in this case, the prosecution has established that Ward impliedly waived his right to remain silent by demonstrating that a *Miranda* warning was given, that Ward understood that warning, and that he made uncoerced statements. *See Berghuis*, 560 U.S. at 384.

### *B. Invocation of Right to Silence*

Under *Miranda*, an interrogation must immediately cease when an "individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent." *Miranda,* 384 U.S. at 473–74. Statements elicited after an accused invokes

7

this right are inadmissible. *Michigan v. Mosley*, 423 U.S. 96, 103–04 (1975). To come within the ambit of this rule, however, an accused's invocation of his right to silence must be unambiguous. *Berghuis*, 560 U.S. at 381; *see also McGraw v. Holland*, 257 F.3d 513, 519 (6th Cir. 2001) ("[A]n invocation of the right to silence, if it is to be effective, must be unambiguous . . . ."). If an accused makes a statement concerning the right to silence "'that is ambiguous or equivocal' or makes no statement, the police are not required to end the interrogation, or ask questions to clarify whether the accused wants to invoke his or her *Miranda* rights." *Berghuis*, 560 U.S. at 381 (quoting *Davis v. United States*, 512 U.S. 542, 461–62 (1994)) (holding that "there is no principled reason to adopt different standards for determining when an accused as invoked the *Miranda* right to remain silent and the *Miranda* right to counsel at issue in *Davis*").

In the present case, Ward maintains that his statements "I'm done" and "I'm done, man" unambiguously invoked his right to remain silent. (DE 13-1 Mot. to Suppress at 4–5.) Therefore, Ward argues that any statements following this invocation of rights must be suppressed. (DE 13-1 Mot. to Suppress at 5.) In opposition, the United States argues that there is no basis to suppress Ward's statements because, taken in the context of the interview, his statements did not constitute an unambiguous expression of his right remain silent. (DE 20 U.S.' Resp. at 13–14.)

Based on the videotaped interview and the facts presented, the Court finds that Ward's statements, in light of the circumstances, were not sufficiently clear to invoke his right to remain silent. *See Berghuis*, 560 U.S. at 381 (citing *Davis*, 513 U.S. at 459). Here, Ward was read his *Miranda* rights, waived those rights, and proceeded to cooperate by answering questions for several minutes. After repeatedly asking to smoke a cigarette and see his girlfriend and her child, Ward became agitated and stated "I'm done" and "I'm done, man." After being permitted to smoke and see Taylor and the child, Ward continued talking

8

and answered questions from detectives in several different jurisdictions. In context, Ward's statements concerned his desire to smoke and see Taylor and the child, not his right to silence. Once he smoked and saw Taylor and the child, he immediately began talking and spoke with multiple officers from several different jurisdictions. Moreover, Detective Wolff testified that he did not understand Ward's statements to be an invocation of his right to silence. Recognizing that there are no "magic words" that a defendant must use in order to invoke his *Miranda* rights, in light of the totality of the circumstances in this case, Ward's statements did not constitute an unambiguous invocation of his right to silence.

### *C. Probable Cause for the Search Warrant*

When an affidavit is challenged on the basis that there was no probable cause, this Court reviews the affidavit to determine whether the issuing judge "had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Greene*, 250 F.3d 471, 478 (6th Cir. 2001). Probable cause exists "when there is a 'fair probability,' given the totality of the circumstances, that contraband or evidence of a crime will be found at a particular place." *Id.* at 479. There must be a "nexus between the place to be searched and the evidence sought." *United States v. Van Shutters*, 163 F.3d 331, 336–37 (6th Cir. 1998) (citation omitted).

"Review of the sufficiency of evidence supporting the probable cause determination is limited to the information contained in the four corners of the affidavit." *Ellison v. Balinski*, 625 F.3d 953, 958 (6th Cir. 2010). Nevertheless, when considering that information, the court looks to the totality of the circumstances, rather than engaging in "line-by-line scrutiny" of an affidavit. *United States v. Jackson*, 470 F.3d 299, 306 (6th Cir. 2006); *see also Illinois v. Gates*, 462 U.S. 213, 230 (1983). Importantly, a state court judge's

probable-cause determination is entitled to "great deference" by a reviewing court. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006). The Sixth Circuit has "long held that an issuing [judge]'s discretion should only be reversed if it was arbitrarily exercised." *United States v. Kinison*, 710 F.3d 678, 682 (6th Cir. 2013) (citation omitted).

Here, the warrant's supporting affidavit provided enough facts to indicate that evidence of the robberies would be found in Ward's vehicle or his motel room. The affidavit describes two robberies that transpired in January 2015, one of which occurred less than 24 hours before the application. The affidavit noted that both robberies were conducted in a similar fashion by a masked male subject wearing dark jeans and a hoodie and armed with a handgun. The affidavit also stated that surveillance footage from both robberies identified the suspect vehicle as a dark-colored Chevrolet Suburban and that an eye witness advised that the vehicle bore Kentucky license plate number "812-DAN." Finally, the affidavit explained that law enforcement officers located a Chevrolet Suburban matching the description of the suspect vehicle at the Catalina Motel. That Suburban bore Kentucky license plate number "815-DAN," only one digit off from the eye-witness's account. Considering the totality of the circumstances, it was reasonable to infer that this vehicle was used in the robberies, and thus, that there was a fair probability that evidence of the crimes would be located inside the vehicle. *United States v. Carney*, 675 F.3d 1007, 1012 (6th Cir. 2012) ("[A] nexus can be inferred based on the nature of the evidence sought and the type of offense that the defendant is suspected of having committed."); *United States v. Sneed*, 385 F. App'x 551, 558 (6th Cir. 2010) ("[C]riminal instrumentalities from a robbery are the type of evidence that an individual . . . . who lacked a permanent residence, would likely keep in his vehicle.").

The affidavit further established that Catalina Motel staff identified the owner of the vehicle by name and photograph as LaCharles Ward, who had been residing in room

238 since January 1, 2015. "[A]n issuing judge may infer that a criminal suspect keeps the 'instrumentalities and fruits' of his criminal activity at his residence." *United States v. Williams,* 544 F.3d 683, 688 (6th Cir. 2008); s*ee also United States v. Jones,* 994 F.2d 1051, 1056 (3d Cir. 1993) (opining that firearms used in a robbery are "likely to be kept in a suspect's residence"). Because the affidavit identified the suspect vehicle and linked it to Ward, who in turn was connected to room 238 at the Catalina Motel, there was a fair probability that evidence of the robberies would be found in his motel room. *See Williams*, 544 F.3d at 688; *United States v. Gunter,* 551 F.3d 472, 481 (6th Cir. 2009) ("[I]t was reasonable to infer that evidence of illegal activity would be found at Gunter's residence."). In sum, viewed in the context of the totality of the circumstances, there was substantial information in the search-warrant affidavit upon which the issuing judge could rest a finding of probable cause. *See Jackson*, 470 F.3d at 306.

Even assuming the warrant was in fact deficient, the seized items should not be suppressed because the officers acted with a good-faith belief that the warrant contained sufficient probable cause to search Ward's vehicle and hotel room. In *United States v. Leon*, 468 U.S. 897 (1984), the Supreme Court determined that the exclusionary rule should not bar the admission of evidence obtained by police officers acting in objectively reasonable reliance on a search warrant that is subsequently held to be defective. *Id*. at 918–21. But the good-faith exception to the exclusionary rule does not apply in the following four circumstances:

> (1) where the issuing magistrate was misled by information in an affidavit that the affiant knew was false or would have known was false except for his reckless disregard for the truth; (2) where the issuing magistrate wholly abandoned his judicial role and failed to act in a neutral and detached fashion, serving merely as a rubber stamp for the police; (3) where the affidavit was nothing more than a "bare bones" affidavit that did not provide the magistrate with a substantial basis for determining the existence of probable cause, or where the affidavit was so

11

> lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable; and (4) where the officer's reliance on the warrant was not in good faith or objectively reasonable, such as where the warrant is facially deficient.

*United States v. Hython*, 443 F.3d 480, 484 (6th Cir. 2006) (citing *Leon*, 468 U.S. at 923).

Ward argues that Detective Howard's affidavit falls within the third category because it constitutes a "bare bones" affidavit. (DE 13-1 at 7.) "The bare-bones inquiry requires examination of the affidavit for particularized facts that indicate veracity, reliability, and basis of knowledge and that go beyond bare conclusions and suppositions." *United States v. Rose*, 714 F.3d 362, 367 (6th Cir. 2013). But "[t]he inquiry into whether an affidavit is so bare bones as to preclude application of the good-faith exception is a less demanding inquiry than the one involved in determining whether an affidavit provides a substantial basis for the magistrate judge's conclusion of probable cause." *Id.* at 367 (citing *United States v Laughton*, 409 F.3d 744, 748–49 (6th Cir. 2005). The court is "bound by the four corners of the affidavit, and . . . may not consider what the officer executing the warrant knew or believed." *Rose*, 714 F.3d at 367. The standard is satisfied where "the affidavit at least contained a minimally sufficient nexus between the alleged illegal activity . . . and the places to be searched to support an officer's good faith belief in the warrant's validity." *United States v. Carney,* 675 F.3d 1007, 1013 (6th Cir. 2012) (citing *Leon,* 468 U.S. at 922; *United States v. Carpenter,* 360 F.3d 591, 596 (6th Cir. 2004)).

A review of the instant warrant's supporting affidavit demonstrates that it satisfies the foregoing test. The affidavit provided some indication of a nexus between Ward's Chevrolet Suburban and motel room and the robberies. As stated above, the affidavit provided that surveillance video identified the suspect vehicle as a dark-colored Chevrolet Suburban, and an eye-witness advised that the suspect vehicle bore Kentucky license plate number "812-DAN." Officers located a vehicle matching the description of the suspect

12

vehicle in the parking lot of the Catalina Motel, bearing a Kentucky license plate only one digit off from the eyewitness's account. Catalina Motel staff identified LaCharles Ward by name and photograph as the individual associated with the Suburban, and indicated that he had been staying in room 238 since January 1, 2015. In sum, this is not the type of "bare bones" affidavit that is lacking in any indicia of probable cause.

### III. Conclusion

In sum, Ward received and understood his *Miranda* warnings, waived the right to remain silent by making informed and uncoerced statements to the police, and did not unambiguously invoke his *Miranda* rights thereafter. Additionally, the affidavit in support of the search warrant contained the requisite facts for the issuing judge to find sufficient probable cause to issue the search warrant. But even if the search warrant was defective, the good-faith exception applies, making exclusion an inappropriate remedy in this case. Accordingly, **IT IS ORDERED** that defendant LaCharles Anthony Ward's motion to suppress (DE 13) is **DENIED.**

Dated September 17, 2015.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY